Justice Sotomayor
delivered the opinion of the Court.
A federal court generally “may not modify a term of imprisonment once it has been imposed.” 18 U. S. C. § 3582(c). Congress has provided an exception to that rule “in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.” § 3582(c)(2). In those circumstances, § 3582(c)(2) authorizes a court to reduce the term of imprisonment “if such a reduction is consistent with” applicable Commission policy statements. The policy statement governing § 3582(c)(2) proceedings instructs courts not to reduce a term of imprisonment below the minimum of an amended sentencing range except to the extent the original term of imprisonment was below the range then applicable. See United States Sentencing Commission, Guidelines Manual § lB1.10(b)(2) (Nov. 2009) (USSG). This case presents the question whether our decision in United States v. Booker, 543 U. S. 220 (2005), which rendered the Guidelines advisory to remedy the Sixth Amendment problems associated with a mandatory sentencing regime, requires treating § lB1.10(b) as nonbinding. We conclude that Booker does not demand that result.
*820 I
The Sentencing Reform Act of 1984 (SRA or Act), 98 Stat. 1987, established the Sentencing Commission and authorized it to promulgate Sentencing Guidelines and to issue policy statements regarding the Guidelines' application. See 28 U. S. C. §§ 991, 994(a). The Act also charged the Commission with periodically reviewing and revising the Guidelines. See § 994(o). When a revision reduces the Guidelines range for a given offense, the Commission must determine “in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced. ” § 994(u).
As enacted, the SRA made the Sentencing Guidelines binding. See Booker, 543 U. S., at 233-234. Except in limited circumstances, district courts lacked discretion to depart from the Guidelines range. See Burns v. United States, 501 U. S. 129, 133 (1991). Under that regime, facts found by a judge by a preponderance of the evidence often increased the mandatory Guidelines range and permitted the judge to impose a sentence greater than that supported by the facts established by the jury verdict or guilty plea. See Booker, 543 U. S., at 235. We held in Booker that treating the Guidelines as mandatory in these circumstances violated the Sixth Amendment right of criminal defendants to be tried by a jury and to have every element of an offense proved by the Government beyond a reasonable doubt. Id., at 243-244.
To remedy the constitutional problem, we rendered the Guidelines advisory by invalidating two provisions of the SRA: 18 U. S. C. § 3553(b)(1) (2000 ed., Supp. IV), which generally required a sentencing court to impose a sentence within the applicable Guidelines range, and § 3742(e) (2000 ed. and Supp. IV), which prescribed the standard of review on appeal, including de novo review of Guidelines departures. 543 U. S., at 259. 'With these two sections excised (and statutory cross-references to the two sections consequently invalidated),” we held that “the remainder of the Act *821 satisfies the Court’s constitutional requirements.” Ibid. Booker thus left intact other provisions of the SRA, including those giving the Commission authority to revise the Guidelines, 28 U. S. C. § 994(o) (2006 ed.), and to determine when and to what extent a revision will be retroactive, § 994(u).
With respect to drug-trafficking offenses, the Sentencing Guidelines establish a defendant’s base offense level according to the type and weight of the drug. See USSG §§2Dl.l(a), (c). When the Commission first promulgated the Guidelines in 1987, it adopted the 100-to-l ratio selected by Congress in setting mandatory minimum sentences in the Anti-Drug Abuse Act of 1986, 100 Stat. 3207. Under that framework, the Commission “treated every gram of crack cocaine as the equivalent of 100 grams of powder cocaine.” Kimbrough v. United States, 552 U. S. 85, 96 (2007). The Commission later sought to alleviate the disparity produced by this ratio. After several failed attempts at reform, see id., at 99, the Commission in 2007 amended the Guidelines to reduce by two levels the base offense level associated with each quantity of crack cocaine. See USSG Supp. App. C, Arndt. 706 (effective Nov. 1, 2007). In 2008, the Commission made that amendment retroactive. See id., Arndt. 713 (effective Mar. 3, 2008).
When the Commission makes a Guidelines amendment retroactive, 18 U. S. C. § 3582(c)(2) authorizes a district court to reduce an otherwise final sentence that is based on the amended provision. Any reduction must be consistent with applicable policy statements issued by the Sentencing Commission. The relevant policy statement, USSG § 1B1.10, instructs courts proceeding under § 3582(c)(2) to substitute the amended Guidelines range while “leav[ing] all other guideline application decisions unaffected.” § 1B1.10(b)(1).[1] *822 Under § 3582(c)(2), a court may then grant a reduction within the amended Guidelines range if it determines that one is warranted “after considering the factors set forth in section 3553(a) to the extent that they are applicable.”* [2] Except in limited circumstances, however, § lB1.10(b)(2)(A) forecloses a court acting under § 3582(c)(2) from reducing a sentence “to a term that is less than the minimum of the amended guideline range.”
II
A jury convicted petitioner Percy Dillon in 1993 of conspiracy to distribute and to possess with the intent to distribute more than 500 grams of powder cocaine and more than 50 grams of crack cocaine in violation of 21 U. S. C. § 846, possession with the intent to distribute more than 500 grams of powder cocaine in violation of § 841(a)(1), and use of a firearm during and in relation to a drug-trafficking offense in violation of 18 U. S. C. § 924(c)(1). Dillon’s convictions exposed him to a statutory sentencing range of 10 years to life for the conspiracy, 5 to 40 years for cocaine possession, and a mandatory minimum sentence of 5 years for the firearm offense, to be served consecutively to the sentence for the drug offenses.
At sentencing, the District Court made additional findings of fact and concluded that Dillon was responsible for 1.5 kilograms of crack and 1.6 kilograms of powder cocaine. Under USSG § 2D1.1, those drug quantities produced a base offense level of 38. After offsetting adjustments for acceptance of *823 responsibility, §3E1.1, and reckless endangerment during flight, § 3C1.2, Dillon’s total offense level remained 38. Coupled with a criminal-history category of II,[3] that offense level produced a then-mandatory Guidelines range of 262 to 327 months’ imprisonment for the drug counts.
The court sentenced Dillon at the bottom of the Guidelines range for those counts, followed by a mandatory 60-month sentence for the firearm count, for a total sentence of 322 months’ imprisonment. At Dillon’s sentencing, the court described the term of imprisonment as “entirely too high for the crime [Dillon] committed.” App. 13. Perceiving no basis for departing from the then-mandatory Sentencing Guidelines, the District Court felt constrained to impose a sentence within the prescribed range. The Court of Appeals for the Third Circuit affirmed Dillon’s convictions and sentence on appeal. See 100 F. 3d 949 (1996).
After the Sentencing Commission made the amendment to the crack-cocaine Guidelines retroactive in 2008, Dillon filed a pro se motion for a sentence reduction pursuant to § 3582(c)(2). In the motion, Dillon asked the court to grant not just the two-level reduction authorized by the amendment but also a further reduction consistent with the sentencing factors found in § 3553(a). Based largely on his post-sentencing conduct, including his determined pursuit of educational and community-outreach opportunities, Dillon contended that a variance from the amended Guidelines range was warranted in his case. He further urged that, after Booker, the court was authorized to grant such a variance because the amended Guidelines range was advisory notwithstanding any contrary statement in § 1B1.10.
The District Court reduced Dillon’s sentence to 270 months — the term at the bottom of the revised Guidelines *824 range.[4] But the court declined to go further. Concluding that the sentencing proceedings at issue in Booker are readily distinguishable from those under § 3582(c)(2), the court found Booker’s holdings inapplicable to the instant proceeding and accordingly held that it lacked authority to impose a sentence inconsistent with § IB 1.10.
The Third Circuit affirmed. 572 F. 3d 146, 150 (2009). The court noted that § 3582(c)(2) is codified in a different section than the provisions invalidated in Booker and contains no cross-reference to those provisions. Finding no other indication that Booker “obviate[d] the congressional directive in § 3582(c)(2) that a sentence reduction pursuant to that section be consistent with Sentencing Commission policy statements,” 572 F. 3d, at 149, the Third Circuit held that § IB 1.10 is binding. It therefore agreed that the District Court lacked authority to reduce Dillon’s sentence below the amended Guidelines range.
We granted certiorari to consider Booker’s applicability to § 3582(c)(2) proceedings. 558 U. S. 1076 (2009).
Ill
A
“[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment” and may not be modified by a district court except in limited circumstances. § 3582(b). Section 3582(c)(2) establishes an exception to the general rule of finality “in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U. S. C. 994(o)” and made retroactive pursuant to § 994(u). In such cases, Congress has authorized courts to “reduce the term of imprison *825 ment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.” § 3582(c)(2).
Characterizing proceedings under § 3582(c)(2) as “resen-tencing” proceedings, Dillon contends that “[t]here is no practical or functional difference between a resentencing pursuant to § 3582(c)(2) and any other resentencing.” Brief for Petitioner 18. Accordingly, Dillon urges, the same principles that govern other sentencing proceedings likewise govern § 3582(c)(2) proceedings, and courts have authority under § 3582(c)(2) to vary from the revised Guidelines range consistent with § 3553(a), see Kimbrough, 552 U. S., at 101. Dillon cites as support for this view § 3582(c)(2)’s instruction to consider the factors in § 3553(a) in determining whether a sentence reduction is warranted. Under Dillon’s approach, Booker would preclude the Commission from issuing a policy statement that generally forecloses below-Guidelines sentences at § 3582(e)(2) proceedings, as USSG § 1B1.10 purports to do. Dillon thus asks us to excise the mandatory language of § IB 1.10(b)(2)(A) and treat that provision as advisory, just as we did the offending statutory provisions in Booker.
The language of § 3582(c)(2) belies Dillon’s characterization of proceedings under that section. By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the “modif[ication of] a term of imprisonment” by giving courts the power to “reduce” an otherwise final sentence in circumstances specified by the Commission. Compare 28 U. S. C. § 994(a)(2)(C) (referring to §3582(c)(2) as a “sentence modification provisio[n]”) with 18 U. S. C. § 3742(f) (authorizing courts of appeals to remand “for further sentencing” upon a finding of error) and § 3742(g) (establishing the terms of “sentencing upon remand” and describing the proceeding as a “resentenc[ing]” (capitalization omitted)). It is also notable that the provision applies only to a limited class of prisoners — namely, *826 those whose sentence was based on a sentencing range subsequently lowered by the Commission. Section 3582(c)(2)’s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding.
The substantial role Congress gave the Commission with respect to sentence-modification proceedings further supports this conclusion. The SRA charges the Commission both with deciding whether to amend the Guidelines, § 994(o), and with determining whether and to what extent an amendment will be retroactive, § 994(u).[5] A court’s power under § 3582(c)(2) thus depends in the first instance on the Commission’s decision not just to amend the Guidelines but to make the amendment retroactive. The court is also constrained by the Commission’s statements dictating “by what amount” the sentence of a prisoner serving a term of imprisonment affected by the amendment “may be reduced.” §994(u); see also Braxton v. United States, 500 U. S. 344, 348 (1991) (noting that the Commission implemented that power through § 1B1.10).
Read in this context, § 3582(c)(2)’s reference to § 3553(a) does not undermine our narrow view of proceedings under the former provision. Section 3582(c)(2) instructs a district court to “conside[r] the factors set forth in section 3553(a) to the extent that they are applicable,” but it authorizes a reduction on that basis only “if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission” — namely, §1B1.10. The statute thus establishes a two-step inquiry. A court must first determine that a reduction is consistent with § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a).
*827 Following this two-step approach, a district court proceeding under § 3582(c)(2) does not impose a new sentence in the usual sense. At step one, § 3582(c)(2) requires the court to follow the Commission’s instructions in § 1B1.1Q to determine the prisoner’s eligibility for a sentence modification and the extent of the reduction authorized. Specifically, § IB 1.10(b)(1) requires the court to begin by “determin[ing] the amended guideline range that would have been applicable to the defendant” had the relevant amendment been in effect at the time of the initial sentencing. “In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.” § IB 1.10(b)(1).
Consistent with the limited nature of § 3582(c)(2) proceedings, § IB 1.10(b)(2) also confines the extent of the reduction authorized. Courts generally may “not reduce the defendant’s term of imprisonment under 18 U. S. C. § 3582(c)(2). . . to a term that is less than the minimum of the amended guideline range” produced by the substitution. § lB1.10(b) (2)(A). Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does §1B1.10 authorize a court proceeding under § 3582(e)(2) to impose a term “comparably” below the amended range. § lB1.10(b)(2)(B).
At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case. Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings.
This understanding of § 3582(c)(2) as a narrow exception to the rule of finality finds further support outside the statute. *828 Federal Rule of Criminal Procedure 43 requires that a defendant be present at “sentencing,” see Rule 43(a)(3), but it excludes from that requirement proceedings that “involvfe] the correction or reduction of sentence under Rule 35 or 18 U. S. C. § 3582(c),” Rule 43(b)(4). Like § 3582(c)(2), Rule 35 delineates a limited set of circumstances in which a sentence may be corrected or reduced. Specifically, it authorizes a court to “correct a sentence that resulted from arithmetical, technical, or other clear error” within 14 days after sentencing, Rule 35(a), and it authorizes a reduction for substantial assistance on the Government’s motion, Rule 35(b). Rule 43 therefore sets the proceedings authorized by § 3582(c)(2) and Rule 35 apart from other sentencing proceedings.
B
Given the limited scope and purpose of § 3582(c)(2), we conclude that proceedings under that section do not implicate the interests identified in Booker. Notably, the sentence-modification proceedings authorized by § 3582(c)(2) are not constitutionally compelled. We are aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather, § 3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines.
Viewed that way, proceedings under § 3582(c)(2) do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge’s exercise of discretion within that range. “[Jjudges in this country have long exercised discretion of this nature in imposing sentence within [established] limits in the individual ease,” and the exercise of such discretion does not *829 contravene the Sixth Amendment even if it is informed by judge-found facts. Apprendi v. New Jersey, 530 U. S. 466, 481 (2000) (emphasis in original). Because § 3582(e)(2) proceedings give judges no more than this circumscribed discretion, “[tjhere is no encroachment here by the judge upon facts historically found by the jury, nor any threat to the jury’s domain as a bulwark at trial between the State and the accused.” Oregon v. Ice, 555 U. S. 160, 169 (2009). Accordingly, Dillon’s Sixth Amendment rights were not violated by the District Court’s adherence to the instruction in § IB 1.10 to consider a reduction only within the amended Guidelines range.
Dillon contends that, even if § 3582(c)(2) does not implicate the constitutional rights vindicated in Booker — something the dissent appears to concede — the remedial aspect of the Court’s decision applies to proceedings under that section and requires that the Guidelines be treated as advisory in such proceedings just as they are in other sentencing proceedings. In support of his position, Dillon invokes the Ninth Circuit’s reasoning in United States v. Hicks, 472 F. 3d 1167, 1170 (2007).[6] Relying on our rejection in Booker of a remedy that would have made the Guidelines advisory only in certain cases — namely, when treating them as binding would run afoul of the Sixth Amendment, see 543 U. S., at 265-267 — the Ninth Circuit held that Booker precludes treating the Guidelines as mandatory for purposes of § 3582(c)(2) and advisory in other contexts, see Hicks, 472 F. 3d, at 1171-1172.
This argument is unpersuasive. The incomplete remedy we rejected in Booker would have required courts to treat the Guidelines differently in similar proceedings, leading potentially to unfair results and considerable administrative *830 challenges. See 543 U. S., at 266. As already explained,. the sentence-modification proceedings authorized by § 3582(c)(2) are readily distinguishable from other sentencing proceedings. Given the substantially different purpose of § 3582(c)(2) and the circumscribed nature of proceedings under that section, requiring courts to honor § lB1.10(b)(2)’s instruction not to depart from the amended Guidelines range at such proceedings will create none of the confusion or unfairness that led us in Booker to reject the Government’s argument for a partial fix.
The dissent’s contrary conclusion rests on two erroneous premises. First, the dissent ignores the fundamental differences between sentencing and sentence-modification proceedings and asserts without explanation that “[njothing turns on” the distinction between them. Post, at 841. For the reasons stated above, the statutory differences between the proceedings are highly significant.
Second, the dissent gives short shrift to the fact that, after Booker, the Commission retains at least some authority to bind the courts. Through §994(u), Congress charged the Commission with determining “in what circumstances and by what amount” the sentences of prisoners affected by Guidelines amendments “may be reduced.” No one disputes that the Commission’s retroactivity determinations made pursuant to the first part of that authorization are binding. See post, at 846-847, and n. 8. This aspect of the Commission’s power emphatically undermines the dissent’s insistence that the Guidelines after Booker are “completely advisory.” Post, at 839. Moreover, while the dissent criticizes our approach for leaving the Commission with only “the tiniest sliver of lawmaking power,” post, at 841, the dissent would leave the Commission with an even smaller and less explicable sliver by dissecting the authority granted by § 994(u).
For all of these reasons, we conclude that neither Booker’s constitutional nor remedial holding requires the result that Dillon urges.
*831 IV
Dillon additionally contends that the District Court erred in failing to correct two mistakes in his original sentence. Under his view of § 3582(c)(2), a district court is required to recalculate a defendant’s sentence. Thus, any mistakes committed at the initial sentencing are imposed anew if they are not corrected. According to Dillon, the District Court in the instant proceeding should have corrected the Booker error that resulted from the initial sentencing court’s treatment of the Guidelines as mandatory, and it should have adjusted his criminal-history category, which he now contends was erroneously inflated.
Dillon’s arguments in this regard are premised on the same misunderstanding of the scope of § 3582(c)(2) proceedings dispelled above. As noted, § 3582(c)(2) does not authorize a resentencing. Instead, it permits a sentence reduction within the narrow bounds established by the Commission. The relevant policy statement instructs that a court proceeding under § 3582(c)(2) “shall substitute” the amended Guidelines range for the initial range “and shall leave all other guideline application decisions unaffected.” § lB1.10(b)(l). Because the aspects of his sentence that Dillon seeks to correct were not affected by the Commission’s amendment to §2D1.1, they are outside the scope of the proceeding authorized by § 3582(c)(2), and the District Court properly declined to address them.
* * *
For the foregoing reasons, the judgment of the Court of Appeals is

Affirmed.

Justice Alito took no part in the decision of this case.

 The Sentencing Commission substantially revised § 1B1.10 in March 2008, see USSG Supp. App. C, Amdt. 712 (Nov. 2009) (effective Mar. 3, 2008), roughly three months before the District Court’s decision in this case. Because the current version of the relevant Guidelines provisions *822 is not meaningfully different from the version in effect at the time of the District Court’s decision, references in this opinion are to the current, 2009 edition of the Guidelines.

 Section 3553(a) provides that a “court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection,” and it enumerates several factors a court “shall consider” in determining an appropriate sentence, including “the nature and circumstances of the offense and the history and characteristics of the defendant,” § 3553(a)(1).

 The probation office based Dillon’s criminal-history assessment on two prior misdemeanor convictions, one for possession of marijuana and one for resisting arrest. Dillon did not object to that calculation of his criminal-history seore.

 The revised sentence reflects a 210-month term of imprisonment for the narcotics offenses and a mandatory, consecutive 60-month term for the firearm offense.

 We do not respond to the dissent’s separatton-of-powers discussion, see post, at 841-846 (opinion of Stevens, J.), as that issue is not fairly encompassed within the questions presented and was not briefed by the parties.

 The Ninth Circuit subsequently agreed to consider en banc Booker’s applicability to § 3582(e)(2) proceedings. See United States v. Fox, 583 F. 3d 596 (2009). The matter was stayed pending our decision in this case. No. 08-30445 (CA9, Dee. 8,2009).